PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS ADDLEMAN, <br><br> Defendant. | CASE NO. 23-CR-022-JD <br><br> **UNITED STATES' UPDATED SENTENCING MEMORANDUM, AND MOTION FOR UPWARD DEPARTURE FROM SENTENCING GUIDELINES** <br><br> Hearing Date: April 28, 2025 <br> Time: 10:30 a.m. <br> Judge: Hon. James Donato |

## I.    INTRODUCTION

A year after he absconded on the eve of sentencing, defendant Nicholas Addleman appears before this Court for sentencing on his conviction for unlawfully possessing a firearm and ammunition under 18 U.S.C. § 922(g)(1).  Addleman is a member of the San Francisco Mission District Norteños, and his extensive criminal history includes a lengthy state prison term for shooting someone in the head. Undeterred, Addleman immediately rearmed himself upon his release from custody in 2022, culminating in the seizure of two Glock firearms with loaded, extended magazines in his truck.  Facing the prospect of a lengthy prison term, Addleman absconded from pretrial supervision in February 2024.  Despite ongoing efforts by the FBI to locate him, he was in the wind, unsupervised for almost a year.  During

1   that time, he is believed to have been involved in a hit-and-run car accident where a gun bearing his

2   DNA was recovered, a large-scale theft, and apparent firearms manufacturing and possession.  Based on

3   Addleman's unrelenting criminality and possession of weapons, and the need to deter future criminal

4   conduct and protect the public, the government and the defense jointly recommend a sentence of 84

5   months in prison, which constitutes an upward departure or variance from the applicable Guidelines

6   range of 57-71 months.  The government also recommends that the Court impose three years of

7   supervised release, a $100 special assessment, and forfeiture of the guns and ammunition from the

8   charged offense.

9   **II.    CHARGED OFFENSE CONDUCT**

10          On the evening of October 14, 2022, San Francisco Police Officers were on patrol in the Inner

11  Sunset neighborhood of San Francisco.  Presentence Investigation Report ("PSR") ¶ 13.  Around 7:15

12  p.m., officers observed Nicholas Addleman walking on Judah Street towards a parking lot.  Addleman

13  was with a woman later identified as his wife, Jaclyn.  Officers knew Nicholas Addleman to be on active

14  parole for convictions of assault with a firearm and shooting at an inhabited dwelling, and that he was

15  subject to a warrantless search condition authorizing officers to search his person, residence, or vehicle

16  at any time for any reason.  *Id.*

17          Officers exited their patrol vehicle and detained Addleman and his wife.  PSR ¶ 14.  Officers

18  conducted a parole search of Addleman and located a set of keys in his front right jacket pocket.  The

19  keys appeared to be for a Ford Vehicle.  Officers pressed the unlock button on the car key fob, which

20  audibly and visibly unlocked a black Ford F-150 truck that was parked approximately 25 feet away.  *Id.*

21          Based on Addleman's possession of the truck keys, the vehicle's close proximity to him, and

22  Addleman's expanded search condition, officers conducted a parole search of his Ford F-150 truck.

23  PSR ¶ 15.  During the search, officers noticed that part of the center console appeared to be looser than

24  normal.  Officers manipulated the rear portion of the center console by pulling it up, which revealed a

25  hidden compartment.  Inside the compartment, officers found two black semi-automatic firearms, the

26  handles of which can be seen in the center of the photo below.  *Id.*

27

28



Addleman was placed under arrest, transported to Taraval Police Station, and Mirandized.  PSR ¶ 15.  Addleman said that he understood his rights, and he told officers that the two firearms in the Ford F-150 belonged to him and were for his protection.  *Id*. at ¶¶ 15-16.

Subsequent DNA testing confirmed the presence of Addleman's DNA on the grip of the loaded Glock 43 firearm pictured below at left, with the probability of the DNA profile on that firearm coming from a random person calculated at 1 in 23.2 trillion. PSR ¶¶ 17-18.  Swabs from the loaded Glock 23 pictured below at right provided "limited support" for exclusion of Addleman, but the likelihood ratio for that finding was only 1 in 57.6. PSR ¶ 18.  Regardless, the firearms were found next to each other in a hidden compartment in Addleman's truck, and he admitted that both guns were his.



### III.    ADDLEMAN'S CRIMINAL HISTORY

Prior to the October 14, 2022 incident, Addleman had been convicted of three felonies, including convictions for assault with a deadly weapon and shooting at an inhabited building. He was sentenced to 9 years in state prison for that 2017 shooting (served 5 years), and he had been out on parole for only three months at the time of the charged federal conduct. PSR ¶ 42.

In the 2017 incident, Addleman got into an argument with people in the parking lot next to the San Francisco Giants ballpark and shot at individuals inside a vehicle. PSR ¶ 42. He shot one victim in the face, and though the bullet lodged in their head (pictured below), the victim miraculously survived. Addleman was seen on surveillance footage ditching the gun nearby and was found with matching ammunition in his pocket shortly after the shooting. Also of concern, Addleman had in his possession at the time of his arrest a master key for SFPD patrol vehicles. *Id.*



In addition to those convictions and another felony conviction for unlawful ammunition possession, Addleman has five misdemeanor convictions, including two for weapons possession and one for assault.

Addleman has also been validated as a member of the San Francisco Mission District Norteño criminal street gang. This is outlined in emails sent by San Francisco Sheriff's Office Deputy Yee to the FBI investigative team (previously filed with the Court as Exhibit A to ECF No. 67 (Gov't Sentencing Memo). In those emails, Deputy Yee indicated that Addleman was a Norteño leader during the five

years he was housed in county jail.  For example, in January 2018, Addleman was caught with jail

"kites" instructing other gang members how to write their own kites, indicating to deputies that

Addleman was operating at a higher level within the gang.  Ex. A at

1.  In November 2021, Addleman was placed in administrative

segregation because he was believed to have ordered the "removal"

or discipline of another Norteño inmate.  *Id*.  His gang affiliation has

likewise been confirmed during police contacts, PSR at ¶¶ 39-40,

and tattoos like the Huelga bird on his left arm, a common symbol

for Norteño gang members, *id*. at 2.  Norteño gang indicia was also

found in Addleman's bedroom during the December 2024 search

described below.



## IV.    ADDLEMAN'S FLIGHT AND SUBSEQUENT CRIMINAL CONDUCT

Addleman was scheduled to be sentenced by this Court on his federal firearms conviction on

February 12, 2024.  However, he absconded from pretrial supervision, and this Court issued a bench

warrant.  ECF No. 79.  The U.S. Attorney's Office and the FBI took a number of steps to locate

Addleman, including: (1) a Ping warrant for cell site location data, (2) a Pen Register Trap and Trace

application, (3) a vehicle tracker warrant in the Eastern District of California, (4) a pole camera order,

and (5) physical surveillance of locations in Vallejo and Oakland, which resulted in a high-speed vehicle

chase through Oakland.  Despite the agents' diligent efforts, Addleman was in the wind, unsupervised

for almost a year.  During that time, he is believed to have been involved in a hit-and-run car accident, a

large-scale theft, and apparent firearm manufacturing and possession.

First, on April 18, 2024, FBI agents conducted physical surveillance of a suspected address for

Addleman in Oakland.  As outlined in an FBI report that has been produced to the defense and

probation, agents surveilled the apartment for about two hours.  At that time, a black BMW sedan exited

the apartment's parking garage with a driver who matched the physical description of Addleman.

Agents followed the vehicle with the intent of finding a safe place to execute an arrest.  However, over

the next 30 minutes, the target vehicle made several evasive maneuvers resembling surveillance

detection techniques, including running red lights, making sudden lane changes, speeding, stopping in

middle of the street, and making illegal U-turns.  The target vehicle made these maneuvers in the Lake Merritt, Downtown Oakland, and Jack London Square areas of Oakland, posing a safety risk to the public due to the surrounding vehicle and pedestrian traffic.  In an abundance of caution and in the interest of public safety, the agents' pursuit was terminated after about 30 minutes.

Second, around 1:00 a.m. on November 28, 2024, a Ford Explorer registered to Addleman's wife was involved in a hit-and-run accident in San Francisco.  Witnesses observed the Explorer driving down a residential street in the Sunnyside neighborhood of San Francisco, crashing into two parked cars, and flipping onto its side.  Two males approximately 5' 8" to 5' 10" tall climbed out of the Explorer, left the engine running, ran to another car midway down the block, and fled before police arrived.  When officers arrived, they looked inside the Explorer and observed a black Sig P320 9mm handgun on the front passenger floorboard.  Two masks, gloves, and a beanie were also found inside the Explorer.  A lab analysis on DNA swabs from the grip of the firearm found Addleman's DNA on the gun, with an inclusion ratio of 1 in 423 octillion.

Third, around 9:45 p.m. on December 9, 2024, a clerk at a gas station in American Canyon, California reported that he had been robbed of $58,624.  A male suspect had pulled up in a black BMW sedan (the same make, class, and color as the vehicle in the FBI chase outlined above), exited the front passenger side of the car wearing a mask, entered the station, and handed the clerk a note that read: "EVERYTHING FROM THE SAFE!!! NO GAMES!!! WE GOT EYES ON YOU, ANY CALLS YOU MAKE WILL BE SEEN!!! EVERYTHING FROM THE SAFE!!!"  The clerk complied, and because the station's earnings had not been collected by the armored truck in several days, the robber made off with over $58,000 in cash.

Police were called to the scene and obtained surveillance footage that corroborated the clerk's account.  Footage showed that the black BMW sedan pulled up to the station about 30 seconds after the clerk opened the blinds on his kiosk.  The robber exited the front passenger seat of the BMW, while the driver remained inside.  There appeared to be sun damage on the front hood of the BMW.  After the clerk retrieved the cash and gave it to the robber, the robber got into the BMW, and the car drove onto Highway 29 in the direction of Vallejo.  License plate readers also caught the BMW entering American

1   Canyon from Vallejo about 10 minutes before the robbery.  The car's front license plate was missing,

2   and the rear plate was covered with paper.

3       Officer issued an All Points Bulletin with a photo of the black BMW used in the robbery,

4   showing the distinctive sun damage to its hood.  Two days later, a Vallejo Police detective located a

5   black BMW with the same sun damage on the hood parked in front of 107 Sandpiper Drive in Vallejo.

6   After conducting a records check on the car, officers learned that it was registered to Nicholas

7   Addleman's wife at 100 Sandpiper Drive (across the street from the parked car)—the same registration

8   address as the Ford Explorer in the San Francisco hit-and-run described above.  Officers discovered that

9   her husband, Addleman, was a wanted federal fugitive.

10      Officers obtained a state tracker warrant for the black BMW, and on December 23, 2024, they

11  located Addleman inside the vehicle in a parking lot and arrested him.  Addleman had $1,839 in cash on

12  him when arrested.  Officers also obtained a state search warrant for the 100 Sandpiper residence and

13  executed it the same day Addleman was arrested.  Addleman's teenage children were inside the

14  residence when officers arrived, and the children identified their mom's bedroom.  Inside that bedroom,

15  officers found the following indicia for Addleman:  (1) photos/selfies of Addleman, (2) a Capitol One

16  letter addressed to "Nicholas Troy at 100 Sandpiper Drive, Vallejo," (3) mail from the Federal Public

17  Defender's Office in San Francisco addressed to "Nicholas Addleman at 100 Sandpiper Drive, Vallejo,"

18  and (4) inmate bands with images of Nicholas and his identification information.  In addition to that

19  indicia, found a box with jewelry and a red bandana with the black Huelga bird on it, a symbol claimed

20  by Norteño street gangs.  Officers also found a fake Illinois state ID card with Addleman's photo on it

21  but bearing a false name.



Also in that bedroom containing Addleman's belongings, officers found gun parts, ammunition, brass knuckles, and a fixed blade.



During their search of the residence's garage, officers located a large tool cabinet. Inside the cabinet, they found two assault rifles, two suppressor devices, two magazines, and a replica firearm:

  

In the garage, officers also found a safe, which they were able to open. Inside the safe, they found two Glock handguns, more suspected gun suppressors, ammunition, and multiple magazines (including a large drum magazine):




## V.    PSR AND APPLICABLE GUIDELINES CALCULATION

Addleman pleaded guilty to Count One of the Information without a plea agreement in place. PSR ¶¶ 3-4.  Probation calculated the Base Offense Level as 22, based on Addleman's possession of a firearm capable of accepting a large capacity magazine after being convicted of a crime of violence (assault with a deadly weapon and shooting at an inhabited building).  PSR ¶ 23; U.S.S.G. ¶ 2K2.1(a)(3).  With a three-point reduction for acceptance of responsibility, the Total Offense Level would be 19.  PSR ¶ 32.  The government agrees with Probation that Addleman has 10 criminal history points, placing him in Criminal History Category V.  PSR ¶ 45.  A Total Offense Level of 19 and CHC V would yield an advisory Guidelines range of 57-71 months.  PSR ¶ 81.

However, the government believes (and the defense implicitly agrees based on its joint recommendation) that a sentence within the advisory Guidelines range would not adequately reflect Addleman's dangerousness or account for his flight from supervision and subsequent criminal conduct. Therefore, whether pursuant to an upward departure to a new Guidelines range or a variance from the existing Guidelines, the parties agree that a higher sentence is warranted.

The government believes that an upward departure from the otherwise applicable Guidelines range is appropriate pursuant to U.S.S.G § 5K2.0(a)(1)(A).  That provision states that "The sentencing

court may depart from the applicable guideline range if—(A) in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." Here, the aggravating circumstances that show Addleman's dangerousness and lack of respect for the legal system include:

- The hit-and-run accident in San Francisco where a gun bearing Addleman's DNA was found in his wife's vehicle
- The high-speed chase in the East Bay with federal agents
- The theft of $58,000 from a gas station
- The search of his family's residence in Vallejo that resulted in seizure of numerous firearms, suppressors, gang indicia, and a fake ID with Addleman's photo

Two potential benchmarks for such an upward departure or variance can be found in U.S.S.G. § 3C1.3 ("Commission of Offense While on Release") and § 2K2.1(b)(1)(A) ("Number of Firearms"). Section 3C1.3 increases the offense level by 3 levels if a statutory sentencing enhancement under 18 U.S.C. § 3147 applies—which addresses criminal offenses committed while on pretrial release. Section 2K2.1(b)(1)(A) increases the offense level by 2 levels when the crime involved possession of 3-7 firearms. Four firearms were found at Addleman's Vallejo house, in addition to the two charged Glocks and the one recovered from their overturned Explorer which bore Addleman's DNA.

If the U.S.S.G. § 3C1.3 enhancement were applied, then the previously-calculated Total Offense Level of 19 would increase to 22. With a Criminal History Category V, the Guidelines range would be 77-96 months. If the U.S.S.G. § 2K2.1(b)(1)(A) enhancement were applied, then the previously-calculated Total Offense Level of 19 would increase to 21. With a Criminal History Category V, the Guidelines range would be 70-87 months. The parties' joint recommendation of 84 months falls within both of these adjusted Guidelines ranges, which the government believes are appropriate benchmarks for the Court's sentence in this case.

1    **VI.    DISCUSSION**

2        **A.    Applicable Sentencing Factors**

3        The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

4    purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520

5    F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate

6    sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the

7    appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive

8    reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

9        Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court

10   should consider these factors applicable to this case, among others:

11           (1)    the nature and circumstances of the offense and the history and
                    characteristics of the defendant;

12

13           (2)    the need for the sentence imposed to reflect the seriousness of the
                    offense, to promote respect for the law, and to provide just
                    punishment for the offense;

14

15           (3)    the need for the sentence imposed to afford adequate deterrence to
                    criminal conduct;

16           (4)    the need to avoid unwarranted sentence disparities among
                    defendants with similar records who have been found guilty of
17                  similar conduct;

18           (5)    the need to provide restitution to any victims of the offense.

19       **B.    A Sentence of 84 months Is Warranted Under 18 U.S.C. § 3553(a)**

20       Addleman's charged offense conduct, lengthy criminal history, flight from supervision, and

21   subsequent criminal activity while AWOL evince a disrespect for the law and pose a significant danger

22   to the public. A prison sentence of 84 months is required to deter future crime and protect the public.

23       First, the offense conduct is quite serious. Despite having just been paroled for a shooting

24   conviction, Addleman immediately rearmed himself with loaded firearms. He had two Glocks with

25   extended magazines at his ready disposal in the center console of his truck. He admitted that the guns

26   were his, and most concerningly, he said that he had the guns to protect himself—suggesting a

27   willingness to use the guns that is supported by his history of shooting people. The nature and

28

UNITED STATES' UPDATED SENT. MEMO            11
23-CR-022-JD

1    circumstances of the offense warrant a substantial prison term.  *See* 18 U.S.C. § 3553(a)(1).

2        Addleman's history and characteristics likewise support the government's sentencing

3    recommendation.  He is a validated Norteño gang member, and a three-time convicted felon who was

4    sentenced to nine years in prison for assault with semiautomatic firearm and shooting at an inhabited

5    vehicle.  That case was originally charged as attempted murder given that Addleman shot one of his

6    victims in the face.  Addleman also has a long history of arming himself with assorted weapons, be they

7    loaded firearms, destructive devices, knives, or brass knuckles.  His seniority in the gang and leadership

8    role while in custody amplifies the danger he poses beyond his own conduct to include actions taken by

9    others at his encouragement or direction.  The jail assault that he allegedly ordered is an example of this.

10   Addleman's violent history, combined with his past failures on parole and pretrial release, demonstrate

11   that he is not amenable to supervision and that only a significant prison term can adequately address

12   those dangers.  *See* 18 U.S.C. § 3553(a)(2).

13       In its original sentencing memo, the government recognized that Addleman had a difficult

14   upbringing and had struggled with drug abuse, recommending a term of 54 months.  But any such

15   mitigation is outweighed by Addleman's subsequent flight from supervision and continued

16   criminality—the threat he poses to the community must be the overriding factor.  That danger can only

17   be prevented through a lengthy prison term, and a sentence of 84 months would result (given the

18   required service of at least 85% of that sentence) in Addleman's longest actual custody time to date.

19   **VII.    CONCLUSION**

20       With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United

21   States respectfully requests that the Court impose a sentence of 84 months' imprisonment, three years of

22   supervised release, a $100 special assessment, and forfeiture of the firearms, ammunition, and

23   magazines involved in the charged crime.

24   DATED:  April 14, 2025                                    Respectfully submitted,

25                                                             PATRICK D. ROBBINS
                                                               Acting United States Attorney
26

27                                                             */s/ Leif Dautch*_____
                                                               LEIF DAUTCH
28                                                             Assistant United States Attorney